UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
ROBERT L. GELTZER, as Chapter 7 Trustee for   :
ASIA GLOBAL CROSSING, LTD. and ASIA           :
GLOBAL CROSSING DEVELOPMENT CO.,              :
:
                Plaintiff,       :
:  05 Civ. 3339 (GEL)
  -against-                                    :
:  **OPINION AND ORDER**
:
ANDERSEN WORLDWIDE, S.C., and                 :
ARTHUR ANDERSEN LLP,                          :
:
                Defendants.      :
:
------------------------------------------------------------x

Jonathan L. Flaxer, Golenbock Eiseman Assor Bell & Peskoe, LLP, New York, NY, for plaintiff.

Jacques Semmelman, Curtis, Mallet-Prevost, Colt & Mosle LLP, New York, NY, for defendants.

GERARD E. LYNCH, District Judge:

      Robert L. Geltzer, the chapter 7 trustee (the "Trustee") for the bankruptcy estates of Asia Global Crossing, Ltd., and Asia Global Crossing Development Co. (collectively, "AGC"), moves for the approval of a settlement with defendants Andersen Worldwide, S.C., and Arthur Andersen LLP (collectively, "Andersen"), in an action by the Trustee charging Andersen with professional malpractice and other torts in connection with services provided to AGC. The motion will be denied, without prejudice to any properly-supported future application for similar relief.

      Ordinarily, settlements of civil lawsuits are private arrangements between the parties. Just as individuals or companies may settle their disputes without going to court at all, a plaintiff generally is free to dismiss a complaint for any reason or none, with or without compensation

from the defendant, without judicial approval or public notice.  See Fed. R. Civ. P. 41(a)(1).  When a case is dismissed by stipulation as a result of an agreement between the parties, the court "normally plays no role whatever, standing 'indifferent' to the terms the parties have agreed to."  Janus Films, Inc. v. Miller, 801 F.2d 578, 582 (2d Cir. 1986), citing Heddendorf v. Goldfine, 167 F.Supp. 915, 926 (D.Mass.1958) (Wyzanski, J.).[1]

In certain types of cases – generally, where the plaintiff acts in a fiduciary or representative capacity for others – more searching judicial scrutiny of a proposed settlement is required.  Such cases include class actions, shareholder derivative suits, antitrust actions brought by the United States, and bankruptcy claims, as well as "any suits affecting the public interest."  Janus Films, 801 F.2d at 582 (citation and internal quotation marks omitted).  In such cases, the court must determine the "fairness" of any proposed settlement.  Id.  This rationale of protecting broader interests applies to court approval of settlements of claims in bankruptcy, because, as is the case here, when the trustee of a bankruptcy estate compromises a claim, the trustee acts not in his or her own personal interest, but on behalf of others such as the estate and its creditors.  For this reason, Fed. R. Bankr. P. 9019(a) requires that notice of a settlement be given "to creditors, the United States trustee, the debtor, and indenture trustees," as well as to "any other entity as the court may direct."

---

[1] Even when a court is asked to order entry of a judgment based on a settlement agreement, it "normally has only a limited role" of review and need "make[] only the minimal determination of whether the agreement is appropriate to be accorded the status of a judicially enforceable decree." Janus Films, 801 F.2d at 582.  Some degree of review is required in this situation because "when a district court 'so orders' a stipulated settlement, it does accept some obligations, such as enforcement of the provisions of a settlement that are not within the power of the litigants to perform, but rather lie within the power of the district court ordering the settlement." Torres v. Walker, 356 F.3d 238, 243 (2d Cir. 2004).

Where a court is responsible for assessing the fairness of a proposed settlement, it must exercise more than superficial scrutiny and may not merely rely on the assurances of any party:

> The fact that courts do not ordinarily scrutinize the merits of compromises involved in suits between individual litigants cannot affect the duty of a bankruptcy court to determine that a proposed compromise forming part of a reorganization plan is fair and equitable.  There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated.  Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.  Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

Protective Committee for Independent Stockholders v. Anderson, 390 U.S. 414, 424-25 (1968) (citation omitted).  Although a judge is not required to consider the "minutia[e] of every claim," Six West Retail Acquisition v. Loews Cineplex, 286 B.R. 239, 249 (S.D.N.Y. 2002) (citation and internal quotation marks omitted), the court must nevertheless assure itself that the settlement is "fair and equitable and in the best interests of the estate."  In re Ashford Hotels, Ltd., 235 B.R. 734, 740 (S.D.N.Y. 1999) (citation and internal quotation marks omitted).

In this case, the papers submitted by the Trustee in support of his motion to approve the settlement do not disclose the amount of the settlement.  This is hardly an insignificant omission.  The action that the Trustee proposes to compromise is a suit for money damages for various torts allegedly committed by Andersen.  The Court obviously cannot execute its duty "to compare the terms of the compromise with the likely rewards of litigation," Protective Committee, 390 U.S. at 425, without knowing the most fundamental of those terms.  That the Trustee has exercised

3

"his reasonable business judgment" in executing the settlement (Trustee Mem. 8), that the settlement "was reached at arms' length" (id. 9), or that notice of the settlement was provided to the various parties listed in Rule 9019(a) and none of them has objected, does not relieve the Court of its independent duty to assess the fairness of the settlement.

The parties clearly understand this obligation. Thus, the Trustee notes that, "[i]n the event the Court wishes to know the Settlement Amount, the parties, will, of course, disclose the Settlement Amount to the Court." (Eiseman Decl. ¶ 14.) The point of redacting the amount evidently is not to hide it from the Court, but from the rest of the world. Thus, the settlement agreement itself, as summarized by the Trustee, provides that, if the Court should "wish to know the Settlement Amount" – as if the Court could wish otherwise – "the parties agree that they will first offer to provide the Court with the Settlement Amount *in camera* and outside the presence of any creditors or other non-parties to the Stipulation, and will ask the Court to place the Settlement Amount under seal." (Trustee Mem. 5.)

This is an extraordinary request. As our Court of Appeals has emphasized, there is a "presumption of access" to judicial proceedings. This presumption "is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice . . . . [P]ublic monitoring is an essential feature of democratic control." United States v. Amodeo, 71 F.3d 1044, 1048 (2d. Cir. 1995). The Second Circuit has instructed that "the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." Id. at 1049. Information most clearly due for disclosure includes any "document which is presented to the court to invoke its powers." Id.

4

at 1050.  A stipulation of settlement in a matter in which the Court must approve the substance of the settlement is most certainly such a document.  The press and public could hardly make an independent assessment of the facts underlying a judicial disposition, or assess judicial impartiality or bias, without knowing the essence of what the court has approved.

In the case of bankruptcy documents, moreover, this general presumption in favor of public filing is reinforced by an explicit statutory command.  Section 107(a) of the Bankruptcy Code specifically provides that, with limited exceptions, all papers "filed in a case under this title . . . are public records and open to examination" by the public.  11 U.S.C. § 107(a).  The only exceptions are to protect a person "with respect to scandalous or defamatory matter" contained in a bankruptcy filing, id. § 107(b)(2), to protect information that might render an individual vulnerable to identity theft crimes, id. § 107(c), and to "protect an entity with respect to a trade secret or confidential research, development, or commercial information," id. § 107(b)(1).  The first two exceptions manifestly do not apply here; the Trustee, however, attempts to persuade the Court that this settlement amount falls within the third exception for confidential "commercial information."

The Trustee submits that, according to Andersen's attorneys, "Andersen no longer engages in accounting or other professional service business operations of the type previously associated with Andersen, and . . . one of its principal activities now is the resolution of claims that have been asserted against it."  (Eiseman Decl. ¶ 19.)  As Andersen's business now consists primarily of settling lawsuits brought against it, the Trustee apparently argues, "the Settlement Amount is commercial information that relates directly to the conduct of Andersen's business."  (Id.)

This constitutes a rather remarkable and untenable redefinition of "commerce." Courts have treated as "commercial information" in bankruptcy filings such data as the names of clients in a list of creditors, lest publication permit competitors of the debtor to identify its clients and recruit them away from the debtor. See, e.g., In re Frontier Group LLC, 256 B.R. 771 (Bankr. E.D. Tenn. 2000). But the terms of the instant settlement have to do only with the instant litigation, and have nothing to do with the competitive business operations of the debtor or of Andersen, in any normal sense of the words. If the Trustee's definition were accepted, then not only would any paper filed by Andersen in the course of litigation likely constitute secret "commercial information," but secrecy under this exception would also extend to any of countless cases involving a business entity actively defending civil suits for damages.

The Trustee, moreover, does not cite any case in which the size of a settlement approved by a court pursuant to Rule 9019(a) was kept confidential as "commercial information" pursuant to 11 U.S.C. § 107(b)(1). Indeed, the Court has located only one case in which such confidentiality was even sought. In In re Hemple, 265 B.R. 200 (Bankr. D. Vt. 2003), the court seemed to accept its authority to seal the settlement if such were appropriate given all the considerations bearing on the exercise of discretion. The court noted, however, that the "starting point" for a consideration of sealing "must be the general mandate of § 107 that absent compelling circumstances all documents filed in bankruptcy cases should be available to the public." Id. at 202. The court then proceeded to list a number of factors bearing on the decision, including among others the necessity of the settlement to the bankruptcy case, whether the settlement would be withdrawn if the confidentiality provision were not honored, the presence or absence of objection from creditors, harm to the public's need to know, whether the creditors

would benefit from the settlement, whether the debtor would suffer irreparable harm absent sealing, whether the parties would have been able to keep the settlement private absent a bankruptcy filing, whose interests would be protected by sealing and the effect of sealing on other interested parties. Id. The court ultimately denied the sealing request, because "the Trustee has not demonstrated that the filing of the settlement agreement falls with the articulated exceptions to the Bankruptcy Code's general rule that all documents in a bankruptcy case be available to the public," without prejudice to the filing of a more specific motion addressing the various relevant factors . Id.

      The application here is similarly lacking in facts that would support a sealed filing. The only reason given by the Trustee for confidentiality is that "public disclosure of the Settlement Amount would enable other claimants against Andersen to determine how much Andersen is currently willing, and able, to pay in respect of the Trustee's claim, thereby potentially undercutting Andersen's negotiating leverage with such claimants." (Eiseman Decl. ¶ 19.) This is a wan excuse for impinging on the public's right of access to judicial documents. There is no discernable public interest, or interest of the bankruptcy estates, in preserving Andersen's "leverage" as against other parties who have sued it. Nor has the movant indicated any authority to support its implicit proposition that protecting the bargaining position of the defendant in other, unrelated cases, is even a proper consideration of a court being asked to approve a settlement in a given case.

      Even if such consideration were proper, the parties have failed to explain how public disclosure of Andersen's proposed amount of payment in this litigation actually would assist other litigants pressing other types of claims against Andersen. Moreover, Andersen's concern

for the privacy of its settlements appears to be at best intermittent and inconsistent: There was no such request for confidentiality in Andersen's settlement of shareholders' class action claims for securities fraud in a related litigation involving Global Crossing, Ltd.  In that instance, the amount Andersen was willing and able to pay is a matter of public record before this very Court.  See Stip. of Settlement, subclause I.E.1.k., Ex. A to Decl. of Sidney S. Liebesman in Support of Lead Plaintiffs' Mot. for Final Approval of Proposed Partial Settlement with the Andersen Defendants, Doc. #642, In re Global Crossing Ltd. Securities Litig., 02 Civ. 910 (S.D.N.Y. Oct. 12, 2005) ("'Cash Settlement Amount' means Twenty Five Million dollars ($25,000,000) to be paid by Andersen pursuant to the terms of this Settlement Agreement.").  Indeed, a curious observer need not even access court records to ascertain the amount Andersen paid in that matter, as the same information is freely available on the website for class members in that case.  See http://www.globalcrossinglitigation.com/stip_4.pdf.  The Trustee point to no untoward commercial consequence to Andersen from that disclosure.

     As noted above, the amount of the settlement is the critical factor in the Court's ability to assess whether the settlement should be approved.  It therefore follows that it is also the critical factor in the ability of the public to monitor the appropriateness of the Court's decision.  The parties' stipulation of settlement is the central document "presented to the court to invoke its power[ ]" to approve the settlement, Amodeo, 71 F.3d at 1050, and the size of the settlement is the critical term in that document.  The sealing request here thus goes to the very core of the ""constitutionally-embedded presumption of openness in judicial proceedings." Doe v. Frank, 951 F.2d 320, 323 (11th Cir. 1992).  Only the most "compelling circumstances" could overcome the strong presumption in favor of public availability of such a document.  Hemple, 265 B.R. at

202. The Trustee's submission falls far short of the showing necessary even to raise a serious question with respect to the sealing of the settlement amount.

Accordingly, because the papers submitted by the Trustee, from which the amount of the settlement has been redacted, are insufficient to permit the Court to exercise its statutory function of reviewing the appropriateness of the settlement, the motion to approve the settlement is denied, without prejudice to the submission of an adequately supported motion. Further, for the reasons stated, the Trustee's request for permission to submit such a motion *in camera* and under seal is denied.

SO ORDERED.

Dated: New York, New York
       January 30, 2007

*(signature)*
GERARD E. LYNCH
United States District Judge

9